**UNITED STATES of America, Plaintiff,**

v.

**Michel J. FLIEGLER and Donald L. Newman, Defendants.**

**No. CV 88–0752 (ADS).**

United States District Court, E.D. New York.

Oct. 29, 1990.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. by Pamela R. Perron, for plaintiff.

Paul F. Corcoran, Garden City, N.Y., for defendants.

## MEMORANDUM AND ORDER

SPATT, District Judge.

The issue in this action is whether the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution (*see* U.S. Const., Amdt. V ["nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"]) precludes the Court from entering partial summary judgment in favor of plaintiff United States of America (the "Government"). Since the Court finds that the granting of partial summary judgment would not violate the Double Jeopardy Clause, the Government's motion is granted.

## I. THE CIVIL ACTION

From September 1974 through December 1984 the defendants and their spouses were the sole shareholders and officers of Arista Devices Corporation ("Arista"), a defense contractor which produced various electronic and electromagnetic devises for the Government. On March 15, 1988 the Government filed a Complaint and on April 13, 1988 an Amended Complaint in which it alleged that Arista submitted fraudulent statements to the Government in regard to six Arista contracts and three Arista subcontracts. The six contracts and three subcontracts described in the Amended Complaint were as follows:

> * Contract F09603–80–C–4665 for the production of 34 "Brush Block Assemblies" used in military aircraft radar, total payments made of $22,186.70;
> * Contract DAAE07–83–C–W640 for the production of 476 "Laser Modification Kits" used in M60–A3 tanks, total payments made of $1,752,361.17;
> * Contract N00383–80–C–3590 for the production of 1,656 "Firing Cap Assemblies" used in ejector bomb racks of A–4 Skyhawk Bombers, total payments made of $185,460.22;
> * Contracts F09603–82–D–04493 and F09603–83–C–3736 for the production of "Elevation Data Generators" installed in the infra-red tail warning systems of F–111 airplanes, total payments of $8,079.75 and $28,802.81 respectively;
> * Subcontract Purchase Orders 1059–28949, 1095–30167, and 1168–34890 for "Terminal Boards" used in the turret of M60–A3 battle tanks, total payments made of $885,472.88; and
> * Contract N00383–80–C–4056 for the production of "Magnetic Amplifiers" for A–4 Skyhawk aircraft computers, total payments made of $24,942.53.

The Amended Complaint alleged seven claims for relief: (1) breach of contract; (2) knowing and intentional participation in breach of contract and aiding and abetting breach of contract; (3) defraud of the Government; (4) fraudulent inducement; (5) submitting false claims to the Government in violation of 31 U.S.C. § 3729 *et seq.*; (6) conspiracy to violate 31 U.S.C. § 3729 *et seq.*; and (7) obtaining monies from the Government. The Government sought $2,907,306.06 in damages on its First, Second, Third, Fourth and Seventh Claims for Relief, and $9,291,918.18 in damages on its Fifth and Sixth Claims for Relief—$8,721,918.18 treble damages ($2,907,306.06 × 3) plus $570,000 statutory damages pursuant to 31 U.S.C. § 3729(a), which provides for a penalty of between $5,000 and $10,000 for each of the 57 false claims allegedly submitted to the Government.

## II. THE INDICTMENT

On April 14, 1988 the defendants were indicted in the Eastern District of New York (CR 88–220 [RR]). The Indictment alleged criminality with respect to some, but not all of the contracts described in the Amended Complaint.

### A. *The Laser Modification Kits*

Count One of the Indictment alleged that the defendants conspired to defraud the Government by obtaining payments and submitting fraudulent claims for Arista's production of Laser and Computer Installation Modification Kits ("Laser Modification Kits") to upgrade the sighting and firing capability of the M60–A3 tank. Counts Two and Three of the Indictment charged the defendants with making false writings for the purpose of obtaining money from the Government in connection with Arista's contract to produce Laser Modification Kits, and Counts Four through Twenty Six of the Indictment alleged that the defendants submitted particular fraudulent claims from January 1984 through February 1985 in connection with the Laser Modification Kits.

### B. *The Terminal Boards*

Count Twenty Seven of the Indictment alleged that the defendants conspired to defraud the Government by obtaining payments and submitting fraudulent claims for Arista's production of Terminal Boards for the M60–A3 tank, in particular Purchase Orders # 1059–28949, # 1095–30167, and

# 1168–34890 (including three amendments thereto). Counts Twenty Eight and Twenty Nine of the Indictment alleged that the defendants devised a scheme to defraud the general contractor for whom Arista subcontracted to build the Terminal Boards, and Counts Thirty and Thirty One alleged that the defendants mailed certain matter in furtherance of the scheme alleged in Counts Twenty Eight and Twenty Nine.

## C. *The Wiring Harness Brush Block Assemblies*

Count Thirty Two of the Indictment alleged that the defendants conspired to defraud the Government by obtaining payment and submitting fraudulent claims in connection with Arista's production of Wiring Harness Brush Block Assemblies ("Block Assemblies") for the radar system used on C–130 and E3A Sentry aircraft. Counts Thirty Five through Forty of the Indictment alleged that the defendants presented particular false claims to the Government in connection with Arista's production of the Block Assemblies.

## D. *The Generator Modules*

Finally, Count Forty One of the Indictment alleged that the defendants conspired to defraud the Government by obtaining payment and submitting fraudulent claims for Arista's production of Elevation Data Generator Modules ("Generator Modules") used in the tail warning systems of the FB–111 fighter bomber, and Counts Forty Two through Forty Seven of the Indictment alleged that the defendants presented particular false claims to the Government with respect to Arista's production of the Generator Modules.

## III. THE GUILTY PLEA AND THE STIPULATION

On July 7, 1988 the defendants pled guilty to Count One of the Indictment, conspiring to defraud the Government by obtaining payments and submitting fraudulent claims for Arista's production of the Laser Modification Kits, pursuant to a plea agreement. Paragraph 5 of the plea agreement provided that

"[t]his agreement is limited to the United States Attorney's Office for the Eastern District of New York and cannot bind other federal, state or local prosecuting authorities. Further, this plea agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any other proceedings directly or indirectly involving the defendants Donald L. Newman and Michel J. Fliegler, including, but not limited to, proceedings relating to potential civil or criminal tax liability and the civil action in *United States of America v. Michel J. Fliegler and Donald L. Newman,* which is pending in the United States District Court for the Eastern District of New York, Docket Number 88–0752 (Glasser, J.)." (*See* Declaration of Pamela R. Perron, Esq., April 2, 1990, Exh.B).

The plea agreement included a Stipulation also dated July 7, 1988 and signed by the defendants, defendants' counsel and an Assistant United States Attorney (*see* Declaration of Pamela R. Perron, Esq., April 2, 1990, Exh.C). In the Stipulation the defendants admitted to certain facts relevant to Count One and other counts of the Indictment. Most pertinent to this action, the defendants stipulated and agreed that they had in fact submitted 61 false claims to the Government, namely:

(a) 11 requests for progress payments in connection with Arista's production of the Laser Modification Kits (Stipulation, ¶ 19);

(b) 12 requests for payment upon shipment of the Laser Modification Kits (Stipulation, ¶ 20);

(c) 26 invoices sent to the contractor on Arista's subcontract to produce the Terminal Boards (Stipulation, ¶ 34);

(d) 6 requests for payment with respect to Arista's production of the Block Assemblies (Stipulation, ¶ 52); and

(e) 6 requests for payment with respect to Arista's production of the Generator Modules (Stipulation, ¶ 67).

A *Fatico* hearing was then held to determine the amount of restitution defendants would be required to pay. On July 14, 1989 Judge Raggi sentenced the defendants to five years imprisonment, which sentence was suspended, 500 hours of community service, a $50 special assessment, and granted the Government's motion to dismiss Counts Two through Forty Seven of the Indictment. (*See* Perron Decl., Exh.D). In addition, Judge Raggi ordered the defendants to make restitution jointly and severally to a third party in the amount of $500,000 and to the United States in the amount of $367,780, of which $260,372 concerned the Laser Modification Kits, $52,326 concerned the Block Assemblies, and $55,082 concerned the "circuit card assembly" (*see* Affidavit of Paul F. Corcoran, Esq., June 19, 1990, ¶ 8 and n. 2; Supplemental Declaration of Pamela R. Perron, Esq., July 30, 1990, ¶ 12). The only restitution paid to the Government to date was the sum of $2,400 by defendant Newman (*see* Perron Supp.Decl., ¶ 16 and Exh.D).

In its motion papers the Government noted that Judge Raggi's restitution award "did not include the costs of investigation testing or prosecution" (Perron Supp.Decl., ¶ 15) of the criminal action. In this motion for partial summary judgment, the Government submitted evidence that it incurred $110,564.90 in cost and fees in prosecuting both the civil and criminal actions against the defendants in order "to show that the requested civil penalties reasonably relate to the government's necessary expenditures to investigate and prosecute [the] defendants' fraud" (Government's Reply Memorandum of Law, p. 1). (*See* Perron Supp.Decl., ¶¶ 3–10 [$3,345 attorneys' fees and costs for civil prosecution]; Declaration of Peter J. Tomao, Esq., July 6, 1990, ¶¶ 3–6 [$3,695 attorneys' fees and costs for criminal prosecution]; Declaration of John Goliber, July 26, 1990 [$10,652 for testing of Terminal Boards and testifying at *Fatico* hearing]; Declaration of Mitchell D. Schlitt, July 5, 1990, ¶¶ 3–8 [$49,014 for 2,180 hours of investigative work by spe-

cial agents of the Defense Criminal Investigative Service and for testing of Laser Modification Kits]; Declaration of Larry M. Dash, July 6, 1990, ¶¶ 2–10 [$42,516.40 * for Air Force Office of Special Investigation's 900 hours of work investigating the defendants from 1985 until 1989 and for testing the Generator Modules and the Block Assemblies]; and Declaration of Robert Reed, July 26, 1990, ¶¶ 2–3 [$1,342.50 testifying at *Fatico* hearing] ).

## IV. THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

By Notice of Motion dated April 2, 1990, the Government moved "for summary judgment in favor of the plaintiff" on the basis of the Stipulation entered into by the defendants prior to their plea and sentence on Count One of the Indictment. The Government's supplemental papers filed on or about August 3, 1990 described the instant motion as one for "partial summary judgment" (*see* Perron Supp.Decl., ¶ 1) on its Fifth Claim for Relief (31 U.S.C. § 3729) as to the Laser Modification Kits (23 false claims), the Terminal Boards (26 false claims), the Block Assemblies (6 false claims), and the Generator Modules (6 false claims), four of the six contracts referred to in the Amended Complaint. The Government asked the Court to enter judgment against the defendants pursuant to 31 U.S.C. § 3729(a), which provides as follows:

"**Liability for certain acts.**—Any person who—

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

\* \* \* \* \* \*

is liable to the United States Government for a *civil penalty* of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act

---

* While in paragraph 10 of his declaration Mr. Dash states that the United States Air Force spent a total of $42,876.00 to investigate the

defendants' fraudulent activity, the individual costs outlined in Mr. Dash's affidavit add up to only $42,516.40.

of that person.... A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages." (Emphasis added).

The term "claim" is defined in 31 U.S.C. § 3729 as follows:

"(c) **Claim defined.**—For purposes of this section, 'claim' includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded."

By this motion, the Government seeks judgment in the amount of $305,000 (at $5,000 per false claim) or $610,000 (at $10,000 per false claim) for the 61 false claims submitted to the Government (*see* Government's Reply Memorandum of Law, p. 13) as a civil penalty pursuant to 31 U.S.C. § 3729(a). Since the Amended Complaint sought $570,000.00 in statutory damages for 57 false claims filed by the defendants, the Government also moved to amend the Amended Complaint to conform to the proof pursuant to Fed.R.Civ.P. 15(b) (*see* Government's Memorandum of Law, p. 3 n. 2).

In response, the defendants contend that their pleas of guilty and Judge Raggi's sentence, which included an order of joint and several restitution, preclude the Government from obtaining summary judgment in the amount of $610,000. The defendants argue that entering summary judgment for $610,00 would violate the Double Jeopardy Clause of the Constitution since that judgment would be based on the same conduct for which the defendants pled guilty and received sentence. In addition, the defendants contend that partial summary judgment in this action would result in a punishment to the defendants disproportional to the actual damages suf-

fered by the Government (*see* Corcoran Aff., ¶¶ 2, 10–12).

■ The Court has received no opposition to the Government's Rule 15(b) motion. Since the defendants admitted to filing 61 false claims in the Stipulation, the Government's motion to amend the Amended Complaint to conform to the proof is granted. Therefore, at issue here is the Government's claim for civil penalties pursuant to 31 U.S.C. § 3729(a).

## V. DISCUSSION

Pursuant to Fed.R.Civ.P. 56(c), summary judgment shall be granted if the supporting evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law (*see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]). A genuine issue of material fact exists "if a reasonable jury could return a verdict for the nonmoving party" (*Anderson, supra; see Converse v. General Motors Corp.*, 893 F.2d 513, 514 [2d Cir.1990]). Moreover, the court is mindful that the evidence submitted by the parties must be viewed in the light most favorable to the defendants, the nonmoving parties (*see Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 [2d Cir.1990]; *Burtnieks v. The City of New York*, 716 F.2d 982, 985 [2d Cir. 1983]).

### A. As To The Terminal Boards and the Generator Modules (32 False Claims)

■ "[T]he Double Jeopardy Clause protects against ... multiple punishments for the same offense." (*United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 [1989]). Neither the defendants' guilty plea to Count One of the Indictment nor Judge Raggi's restitution order (*see* Perron Supp.Decl., ¶ 13) concerned the Terminal Boards or the Generator Modules, and therefore the portion of the Government's motion which seeks summary judgment for the civil penalty as to

the Terminal Board false claims and the Generator Module false claims does not implicate the Double Jeopardy Clause. (*See United States v. Halper, supra,* 109 S.Ct. at p. 1903 ["Nothing in today's ruling precludes the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive. In such a case the Double Jeopardy Clause simply is not implicated"]).

■ In the Stipulation, the defendants admitted (1) that as president and vice president of Arista they controlled Arista's daily operations (Stipulation, ¶ 2); (2) that through Arista they knowingly presented 26 false claims, that is requests for payment, to the Government with respect to the Terminal Boards (Stipulation, ¶ 34); and (3) that through Arista they knowingly presented 6 false claims, that is requests for payment, to the Government with respect to the Generator Modules (Stipulation, ¶ 67). Thus, the defendants are collaterally estopped from contesting the facts they stipulated to in their criminal action (*see Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568, 71 S.Ct. 408, 413, 95 L.Ed. 534 [1951] [quoting *Frank v. Mangum,* 237 U.S. 309, 334, 35 S.Ct. 582, 590, 59 L.Ed. 969 [1915] ["it is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding ... to questions 'distinctly put in issue and directly determined' in the criminal prosecution"]; *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 [1969] ["a guilty plea is an admission of all the elements of a formal criminal charge"]; *United States v. Killough,* 848 F.2d 1523, 1528 [11th Cir.1988] [prior guilty plea in which defendants admitted to paying a total of at least $577,400 in kickbacks to federal officials estopped defendants from contesting liability in subsequent 31 U.S.C. § 3279 action]; *Calvin Klein, Ltd. v. Trylon Trucking Corp.,* 892 F.2d 191, 194 [2d Cir.1989] [quoting *Fisher v. First Stamford Bank & Trust Co.,* 751 F.2d 519, 523 [2d Cir.1984] [" 'A stipulation of fact that is fairly entered into is controll-

ling on the parties and the court is bound to enforce it' "]).

As a result, the Government is entitled to summary judgment with respect to that portion of its motion which sought a civil penalty pursuant to 31 U.S.C. § 3729(a) for the 26 Terminal Board false claims and the 6 Generator Module false claims.

■ The amount of the penalty that should be imposed pursuant to 31 U.S.C. § 3729(a) for each of these 32 false claims is left to the Court's discretion. (*See* Government's Reply Memorandum of Law, p. 7 ["the United States respectfully requests that the Court exercises its discretion to award the higher penalty"]; *United States v. Hill,* 676 F.Supp. 1158, 1182 [N.D. Fla.1987] ["The range in the amount of forfeitures apparently represents congressional intent to allow discretion in assessing forfeitures"]). Since the Government has not presented any reason why the highest fine is appropriate, the Court in its discretion enters partial summary judgment in the amount of $160,000 representing the sum of $5,000 for each of the 26 Terminal Board false claims and the 6 Generator Module false claims.

B. *As To The Wiring Harness Brush Block Assemblies (6 False Claims)*

In the Stipulation the defendants admitted that through Arista they knowingly presented 6 false claims, that is requests for payments, to the Government with respect to the Block Assemblies (Stipulation, ¶ 52). As a result the defendants are estopped from disputing their liability under 31 U.S.C. § 3729(a) (*see Emich Motors Corp. v. General Motors Corp., supra,* 340 U.S. at p. 568, 71 S.Ct. at p. 413; *McCarthy v. United States, supra,* 394 U.S. at p. 466, 89 S.Ct. at p. 1171; *Calvin Klein, Ltd. v. Trylon Trucking Corp., supra,* 892 F.2d at p. 194).

■ Judge Raggi ordered the defendants to pay $52,326 in restitution to the Government with respect to the Block Assembly false claims. The defendants contend that Judge Raggi's order of restitution precludes the Government from obtain-

ing statutory damages under 31 U.S.C. § 3729(a) (*see* Defendants' memorandum of Law, pp. 4–5). The Court disagrees. Judge Raggi ordered restitution to the Government pursuant to 18 U.S.C. § 3663(a) ("The court, when sentencing a defendant convicted of an offense under this title ... may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense"). The Victim and Witness Protection Act provides as follows:

> "Any amount paid to a victim under an order of restitution shall be set off against any amount *later* recovered as compensatory damages by such victim in—
>
> (A) any Federal civil proceeding;" (18 U.S.C. § 3663[e][2] [emphasis added]).

The restitution statute itself thus contemplates subsequent civil actions based on the same fraudulent acts as alleged and proven in a prior criminal action. In fact, 18 U.S.C. § 3664(e) provides that:

> "A conviction of a defendant for an offense involving the act giving rise to restitution under this section shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim."

Courts have allowed actions for civil damages to go forward despite the existence of a prior order of restitution, both where the Government was the plaintiff (*see United States v. Loesche*, 688 F.Supp. 649, 651 [C.I.T. 1988] ["restitution ordered by the criminal judgment does not exhaust the Government's right to pursue additional civil penalties"]; *see also* 52 Fordham L.Rev. 507, 524 [1984] [although statute does not define the term "victim," broad definition of "victim" to include federal government should be adopted]) and where a private party was the plaintiff (*see Teachers Ins. & Annuity Ass'n v. Green*, 636 F.Supp. 415, 418 [S.D.N.Y.1986] [emphasis in original] ["While the statute provides for a set-off of any amounts the defendant has already *paid*, it does not bar the victim of a

crime from obtaining a civil judgment for the amounts yet unpaid.... the statute permits a crime victim to obtain a civil judgment for the unpaid sums still owing from the person who committed the crime"] ).

The Court finds that the Government's motion for partial summary judgment on its claim for a civil penalty with respect to the six Block Assembly false claims is not precluded by Judge Raggi's restitution order. In the exercise of its discretion, the Court orders the entry of partial summary judgment in the amount of $30,000 representing the sum of $5,000 for each of the six Block Assembly false claims.

## C. *As To The Laser Modification Kits (23 False Claims)*

■ Judge Raggi imposed sentence on the defendants, and ordered restitution in the amount of $260,372, for conspiring to submit false claims to the Government with respect to the Laser Modification Kits. The defendants' guilty plea to Count One of the Indictment and the contents of the Stipulation collaterally estops the defendants from disputing their liability under 31 U.S.C. § 3729(a)(1) with respect to the Laser Modification Kits (*see* 31 U.S.C. § 3731[d] ["Notwithstanding any other provision of law, ... a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730"]; *Emich Motors Corp. v. General Motors Corp., supra,* 340 U.S. at p. 568, 71 S.Ct. at p. 413; *McCarthy v. United States, supra,* 394 U.S. at p. 466, 89 S.Ct. at p. 1171; *see also* Stipulation, ¶¶ 19 and 20; *Sinicropi v. Milone,* 915 F.2d 66, 68 [2d Cir.1990] [courts must enforce stipulations that narrow the issues]; *Calvin Klein, Ltd. v. Trylon Trucking Corp., supra,* 892 F.2d at p. 194).

As discussed above, the $260,372 restitution order does not preclude the imposition of a civil fine in this action. However, since the defendants pled guilty to Count One of the Indictment, the Double Jeopardy Clause precludes the Government from obtaining a statutory fine for the 23 Laser Modification Kit false claims if such a fine would amount to a second "punishment" for these offenses. The Supreme Court addressed this exact issue in *United States v. Halper, supra*. In *Halper*, the defendant was indicted and convicted of submitting 65 false claims to a fiscal intermediary for Medicare in violation of 18 U.S.C. § 287. He was sentenced to two years imprisonment and fined $5,000. The Government subsequently brought a civil action against the defendant pursuant to 31 U.S.C. § 3729 *et seq.* based on the same 65 false claims, and moved for summary judgment in the amount of $135,000, $2,000 ** for each false claim. The District Court granted the Government's motion, but ruled that the mandatory $135,000 fine bore no rational relation to the Government's actual loss of $585 and estimated cost for investigating and prosecuting the action of $16,000, and ruled that such a fine would violate the Double Jeopardy Clause. Finding 31 U.S.C. § 3729 unconstitutional as applied to the defendant, the District Court limited its judgment in favor of the Government to $1,170, twice the amount of the costs of the civil action.

On direct appeal, the Supreme Court vacated the judgment of the District Court. First, in addressing the issue of "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Cause," the Court held that "a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." (*United States v. Halper, supra*, 109 S.Ct. at pp. 1901–02). The Court articulated this holding as follows:

"The rule is one of reason: Where a defendant previously has sustained a criminal penalty *and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment'* in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting, the size of the civil sanction the Government may receive without crossing the line between remedy and punishment." (*Id.* at p. 1902 [emphasis added]; *see also id.* at p. 1903 n. 12 ["It is only when a sizable number of false claims is present that, as a practical matter, the issue of double jeopardy may arise"]).

In applying this rule, the Court remanded the action to the District Court to determine whether the mandatory civil penalty constituted a second punishment, stating that:

"we think it unfair to deprive the Government of an opportunity to present to the District Court an accounting of its actual costs arising from Halper's fraud, to seek an adjustment of the District Court's approximation, and to recover its demonstrated costs. While we agree with the District Court that the disparity between its approximation of the Government's costs and Halper's $130,000 liability is sufficiently disproportionate that the sanction constitutes a second punishment in violation of double jeopardy, we remand the case to permit the Government to demonstrate that the District Court's assessment of its injuries was erroneous." (*Id.* at pp. 1903–04).

■ The Court's holding in *Halper* requires a fact-specific analysis of the size of the civil penalty in relation to the Government's costs to determine if the former

** 31 U.S.C. § 3729 was amended in October 1986, subsequent to the Government's motion for summary judgment in *Halper,* to increase the civil penalties from $2,000 to "not less than $5,000 and not more than $10,000 for each false claim." (*See United States v. Halper, supra,* 109 S.Ct. at p. 1896 n. 3)

amounts to a second "punishment." (*See United States v. Marcos Schloss & Co., Inc.*, 724 F.Supp. 1123, 1128 [S.D.N.Y.1989] [quoting *United States v. Halper, supra,* 109 S.Ct. at p. 1902] [court held that "[t]he less than $20,000 penalty paid by [the defendant] for its trading in American Brands cannot fairly be said to serve 'only as a deterrent or retribution.' … The fine does not in and of itself rise to the level of punishment contemplated by the Court in *Halper*"]; *United States v. Pani*, 717 F.Supp. 1013, 1019 [S.D.N.Y.1989] [quoting *United States v. Halper, supra,* 109 S.Ct. at p. 1901] [$32,460 recovery by the government with respect to three false claims submitted by defendant "cannot be said to bear 'no rational relationship to the goal of compensating the Government for its loss' "]; *United States v. WRW Corp.*, 731 F.Supp. 237, 239 [E.D.Ky.1989] [citation omitted] ["While it is difficult, if not impossible to ascertain the United States' actual loss due to the defendants' mine safety and health violations, its losses include the ancillary costs of detection, investigation, and prosecution, that routinely occur as a result of the United States' enforcement of the Act. The penalty assessment in this action [of $25,000 against each of the three individual defendants] is not so extreme and divorced from the United States' expenses incurred in the investigation and prosecution of the defendants' violations to constitute punishment, rather than the remedial goal of ensuring safe mining conditions and practices"]; *United States v. Hall*, 730 F.Supp. 646, 655 [M.D.Pa.1990] [court denied summary judgment for civil penalty for transporting currency without filing a report, holding that "the Government puts forth only the most minimal effort at establishing a rational relationship between the $1,035,000 civil penalty and the goal of making the Government whole"] ).

Judge Raggi's restitution order did not include the costs which the Government contends are rationally related to the civil penalty in this case (*see* Perron Supp.Decl., ¶ 15; Government's Supplemental Rule 3[g] Statement, ¶ 3; and Corcoran Aff., ¶ 8 and n. 2; *see also* 31 U.S.C. § 3729[a][1] ["A

person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages"] ). In this regard, the Government submitted affidavits "accounting" for $110,564.90 in costs it incurred in prosecuting both the criminal and civil actions against the defendants, and argued that a civil penalty of $115,000 or $230,000 as to the 23 Laser Modification Kit false claims "would not be 'overwhelmingly disproportionate' to the undisputed amount of actual damages" (Government Reply Memorandum of Law, p. 10) and therefore is not "punishment."

 These affidavits are competent evidence of the costs of prosecuting the defendants, and the defendants have not challenged their accuracy (*see* Fed.R.Civ.P. 56[e] ["When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party"] ). Crediting the Government's proof, the Court finds that the Government's costs of $110,564.90 bears a rational relation to the $115,000 civil penalty the Court imposes in its discretion pursuant to 31 U.S.C. § 3729(a) ($5,000 for each of the 23 Laser Modification Kit false claims), and therefore the civil penalty does not violate the Double Jeopardy Clause.

Therefore, the Government's motion for summary judgment with respect to the 23 Laser Modification Kit false claims is granted in the amount of $115,000.

## VI. CONCLUSION

To review, the Government's motion for partial summary judgment seeking statutory civil penalties pursuant to 31 U.S.C. § 3729(a) on its Fifth Claim for Relief is granted (a) in the amount of $160,000 as to the 26 Terminal Board false claims and the six Generator Module false claims; (b) in

the amount of $30,000 as to the six Block Assembly false claims; and (c) in the amount of $115,000 as to the 23 Laser Modification Kit false claims. Pursuant to 18 U.S.C. § 3579(e)(2)(A), the Court's entry of partial summary judgment is reduced by $2,400, the amount of restitution paid to the Government by the defendants to date.

The parties are directed to appear for a status conference at the United States District Courthouse, Uniondale, New York, Courtroom A on November 16, 1990, at 9:00 a.m.

SO ORDERED.