**Robert D. PHILLIPS, individually and on Behalf of other shareholders of Computer Depot, Inc., similarly situated, Plaintiffs,**

v.

**KIDDER, PEABODY & CO., Defendant.**

**No. 87 Civ. 4936 (DNE).**

United States District Court, S.D. New York.

March 25, 1988.

Schoengold & Sporn, P.C., New York City (Samuel P. Sporn, of counsel), for plaintiff Robert D. Phillips.

Howard, Darby & Levin, New York City (Philip K. Howard and C. William Phillips, of counsel), for defendant Kidder, Peabody & Co.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

### BACKGROUND

This purported class action arises out of the filing of a Chapter 11 petition in Bank-

ruptcy by Computer Depot, Inc. ("CDI"). The named plaintiff, Robert Phillips ("Phillips"), purchased CDI stock both during the initial public offering of the securities and in the secondary market. On both occasions Phillips purchased the stock from the defendant, Kidder, Peabody & Co. ("Kidder"). Plaintiff, on behalf of a putative class, asserts claims under Section 11 of the Securities Act of 1933, Sections 10(b) and 12(b) of the Securities Exchange Act of 1934, Rule 10b–5 of the Securities Exchange Commission, and common law fraud. The substance of plaintiff's claims is that the defendant failed to disclose the actual state of flux of the personal computer retail market in CDI's prospectus and subsequent SEC filings.

On June 20, 1986, a different named plaintiff, Ronald Kassover, filed a purported class action ("Minnesota action" or "Kassover action") arising out of the same events in the District of Minnesota against CDI, the individual directors of CDI, Kidder, and Dain Bosworth, an underwriter. In the Minnesota action, Kidder moved for summary judgment on the two claims brought against it on the basis that the claims were time-barred. The district court granted the defendant's motion and dismissed Kidder from the case.[1]

As part of the summary judgment motion, Phillips, the named plaintiff in the case at bar, moved to intervene in the Minnesota action. That application was denied by the Minnesota district court because it found that intervention would cause undue delay and prejudice.[2] On July 10, 1987, Phillips instituted the instant action in the Southern District of New York.

Kidder now moves this court, pursuant to 28 U.S.C. § 1404 for an order transferring this action to the District of Minnesota. Alternatively, Kidder moves the court, pursuant to Section 11(e) of the Securities Act of 1933, to require an undertaking by the plaintiff for the payment of the costs of defending this action, including reasonable attorney's fees.

## I. TRANSFER OF VENUE

28 U.S.C. § 1404 provides in pertinent part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision whether to grant a motion to transfer lies in the sound discretion of the court. *See Eichenholtz v. Brennan*, 677 F.Supp. 198, 199 n. 3, 203 (S.D.N.Y.1988); *Sheet Metal Worker's Nat'l Pension Fund v. Gallagher*, 669 F.Supp. 88, 91 (S.D.N.Y.1987). The burden of establishing that a transfer of venue is appropriate under Section 1404 is on the moving party. *See Richardson Greenshields Securities, Inc. v. Metz*, 566 F.Supp. 131 (S.D.N.Y.1983).

Kidder argues that transfer to Minnesota is appropriate for the following reasons:

1. Keeping the Phillips suit in New York would be duplicative.

2. Minnesota is a more convenient forum for the non-party witnesses.

3. Plaintiff will not be inconvenienced by a transfer of venue to Minnesota.

4. The interests of justice require a transfer to Minnesota.

For the reasons stated below, the court is unpersuaded by these arguments and accordingly declines to transfer this action to the District of Minnesota.

### A. *Duplicative Litigation*

Kidder is no longer a party to the Minnesota action. Phillips was denied the opportunity to intervene against Kidder in that action. There has been no indication by either party to the instant action as to whether a class has been certified in the

---

1. The court based its dismissal on the fact that the information the plaintiff claimed was not disclosed—the rapidly changing market for personal computers due to price decreases—was available over one year prior to the institution of the Minnesota Action.

2. The Minnesota court viewed the attempt to intervene as a "transparent response to the imminent success of [the summary judgment motion]" and as an attempt "to shore up a crumbling lawsuit." *Kassover v. Computer Depot, Inc.,* —— F.Supp. ——, —————, No. 3–86 Civ. 586, slip op. at 7–8 (D.Minn.1987).

Minnesota action. As a result, neither party before this court is currently a party to the litigation in Minnesota. Accordingly, it is not apparent how this action can be duplicative of the proceeding in Minnesota.

The defendant contends that keeping the action in New York will require duplicative discovery and require witnesses to testify twice. It is unclear that a transfer to Minnesota will obviate the duplication. There is no guarantee that if the Phillips action were transferred to Minnesota it would be consolidated with the Kassover action. To consolidate the Phillips action with the Kassover action would be tantamount to allowing Phillips to intervene. In light of the Minnesota court's denial of Phillips' motion to intervene, it is unlikely that the two actions would be consolidated. Consequently, if the two actions were not consolidated, duplication may occur irrespective of the forum.

### B. *Convenience of Non–Party Witnesses*

Kidder contends that most of the non-party witnesses are in Minnesota and that New York is an inconvenient forum to those witnesses. Moreover, according to Kidder, much of the third-party evidence is in Minnesota. Nevertheless, this contention is deficient. Although the location of *relevant* witnesses and documents may be considered in determining the need for a transfer of venue, Kidder does not specify what relevant witnesses or documents are present in Minnesota.

More important, Kidder has not specified the importance of the third-party witnesses or documents. Since Phillips' claims are against Kidder, much of the discovery will revolve around Kidder's personnel and what knowledge it had at the time of the filing of the prospectus. For example, with respect to the Section 11 claims, the principal inquiry will be to determine whether Kidder's efforts to substantiate the information in the prospectus constitute "due diligence." Discovery regarding the Section 10(b), Rule 10b–5, and common law fraud claims will revolve around the *Kidder's* state of mind.

Accordingly, the court finds that the defendant, Kidder, has failed to carry its burden with respect to this factor. Moreover, even assuming arguendo that the third-party evidence would predominate, the convenience of third-party witnesses alone would not justify transfer to the Minnesota forum.

### C. *Plaintiff Not Inconvenienced*

Kidder next argues that plaintiff, Phillips, would not be inconvenienced if required to litigate his claims in Minnesota. Kidder reasons that, although a plaintiff's choice of forum is usually entitled to substantial deference, *see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), that choice is entitled to less weight when the plaintiff is a non-resident of the forum and the plaintiff represents a putative class comprised of plaintiffs from a variety of fora. *See Eichenholtz v. Brennan,* 677 F.Supp. 198, 202 (S.D.N.Y.1988).

Although the legal propositions advanced are correct, Kidder fails to note that Section 1404 speaks of the "convenience of *the parties*" (emphasis added). No forum could be more convenient for Kidder than the Southern District from New York, which is within walking distance of the defendant's corporate headquarters. The standard that Section 1404 imposes on the party seeking transfer is that a transferee forum be *more* convenient than the transferor forum. Kidder merely contends that Minnesota is *not less* convenient for the plaintiff, but it does not—and it cannot—maintain that Minnesota is *more* convenient for either party.

### D. *The Interests of Justice*

Under the rubric of "the interests of justice," Kidder sets forth what appears to be the core of its concerns in this motion: Apprehension of inconsistent determinations. This apprehension, however, is speculation and conjecture, because not every occurrence within the realm of possibility is probable or likely to occur. Based on such speculative concerns, however, the defendant asks the court to transfer this case to Minnesota, although neither the plaintiff nor the defendant are parties to the Minne-

sota action. This appears to be an extreme response to a purely hypothetical danger.

Kidder asserts a fear of inconsistent determinations as primary manifestation of the "justice" of a transfer. Notwithstanding Kidder's assertions, it appears that the rules of preclusion are sufficient to defend against the dangers of inconsistent determinations.[3] Moreover, transfer of venue would appear inadequate to allay Kidder's fears. As was discussed above, there is no assurance that if this case were transferred to Minnesota it would be consolidated with the Kassover action. Were the case tried before a different judge in that district, the purported risk of inconsistent determinations would remain unchanged.

In conclusion, defendant's apprehension of inconsistent determinations does not tip the scales of justice in favor of a transfer, which in any event would not reduce the apprehended risks.

### E. *Summary*

As the defendant has failed to demonstrate that either the convenience of the parties or the interest of justice would be served by a transfer of venue, defendant's motion pursuant to 28 U.S.C. § 1404 is denied.

### II. THE UNDERTAKING

■ Defendant Kidder moves pursuant to Section 11(e) of the Securities Act of 1933, 15 U.S.C. § 77k, for an order requiring the plaintiff to post an undertaking to secure the payment of the costs of defending this lawsuit if a judgment were to be rendered for the defendant. Section 11(e) provides in relevant part:

In any suit under this or any other section of this title [15 U.S.C. § 77a et seq.] the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant,

upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

15 U.S.C. § 77k(e).

The principal purpose of Section 11(e) is to "deter the bringing of meritless actions solely for the purposes of procuring a favorable settlement." *Straus v. Holiday Inns, Inc.*, 460 F.Supp. 729, 732 (S.D.N.Y. 1978) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 211 n. 30, 96 S.Ct. 1375, 1389, n. 30, 47 L.Ed.2d 668 (1976). The Second Circuit, has consistently held that Section 11(e) requires a specific finding that an action has been brought in "bad faith" or "border[s] on the frivolous." *Klein v. Shields & Co.*, 470 F.2d 1344, 1347 (2d Cir.1972); *Katz v. Amos Treat & Co.*, 411 F.2d 1046, 1056 (2d Cir.1969); *Straus v. Holiday Inns, supra*, 460 F.Supp. at 732. Moreover, requests for an undertaking are generally disfavored. *See Straus, supra*, 460 F.Supp. at 732.

The defendant makes no reference to the alternative standards that it must satisfy under Section 11(e). It bases its application solely on the "policy" underlying Section 11(e) without discussing the specific findings that this court would need to make in order to require an undertaking. At this early stage of the case and in light of the paucity of the record, the court is loathe to make a finding that the instant action was brought in bad faith or borders on the frivolous.

It should be noted that the court, under Section 11(e), is free to impose the costs of the litigation after a judgment in favor of

---

**3.** The defendant in its memorandum of law asserts that the ruling by the Minnesota court dismissing the claims against Kidder is not yet "final". *See* Defendant's Memorandum in Support at 2. Neither party has indicated whether the Minnesota action is currently being appeal-

ed. The court, without further illumination, fails to see how a dismissal of two claims against one defendant on a summary judgment motion is not "final" for any purpose including claim or issue preclusion.

defendant, even absent an undertaking. Moreover, Rule 11 of the Federal Rules of Civil Procedure also provides a for sanctions, not only against a party but also against its attorney, for advancing frivolous claims. Accordingly, defendant's application for an undertaking is denied.

## CONCLUSION

Defendant's motion for transfer pursuant to 28 U.S.C. § 1404 and motion for an order requiring plaintiff to post an undertaking pursuant to Section 11(e) of the Securities Act of 1933, 15 U.S.C. § 77k(e), are hereby denied.

SO ORDERED.