**LYNDONVILLE SAVINGS BANK & TRUST COMPANY, Plaintiff–Appellee,**

v.

**Roger R. LUSSIER and Applied Research and Development, Inc., Defendants–Appellants,**

**Evelyn Lussier, Defendant.**

**State of Vermont, Commissioner of the Department of Banking, Insurance, Securities and Health Care Administration, Movant.**

**Docket No. 98–7079**

United States Court of Appeals, Second Circuit.

Argued: Nov. 10, 1999

Decided: May 3, 2000

---

6. Nguyen has filed a motion to reopen with the BIA. The BIA, apparently, has not yet acted on that motion.

David J. Williams, St. Johnsbury, Vermont (Sleigh & Williams, St. Johnsbury, Vermont, of counsel), for Defendants–Appellants.

Richard A. Johnston, Boston, Massachusetts (Hale and Dorr LLP, Boston Massachusetts; John C. Gravel, Bauer, Anderson & Gravel, Burlington, Vermont, of counsel), for Plaintiff–Appellee.

Before: CARDAMONE, SOTOMAYOR, and KATZMANN, Circuit Judges.

CARDAMONE, Circuit Judge:

We construe on this appeal a federal statute that permits a restitution order entered in a criminal sentencing proceeding to be enforced like a judgment in a civil suit. The restitution order in this case directed defendants to repay their victim a large sum of money. The victim brought a federal civil suit to have the criminal order amended to direct payment in full "forthwith," rather than in installments as provided in the restitution order. The statute in question grants a victim the right to enforce a restitution order "in the same manner as a judgment in a civil action." But this statutory right to enforcement is part of the criminal sentencing process and may not be read to create a separate and independent civil cause of action to obtain modification of a restitution order. Enforcement of the criminal order and the institution of a civil suit may both be part of our legal landscape, but the two are not interchangeable like two peas in a pod; they are very different legal processes resembling each other no more than an apple does an oyster.

Defendants Roger Lussier and Applied Research and Development, Inc., Lussier's wholly-owned corporation, appeal from a judgment of the United States District Court for the District of Vermont (Murtha, C.J.) entered September 19, 1997, awarding plaintiff Lyndonville Savings Bank and Trust Co. (Lyndonville or bank) $8,769,740.00. (The district court dismissed Evelyn Lussier as a defendant on February 15, 1996). The award was based on defendant Lussier's misdeeds as Lyndonville's president and chairman of its board of directors between 1988 and 1993. In essence, Lussier and his cronies dominated the board, which also served as the bank's loan committee. Lussier used his co-defendant Applied Research and Development as a shell corporation to facilitate his breach of his fiduciary duty. He used his control over the bank to finance a variety of his friends' and business associates' imprudent, and ultimately disastrous, investments.

As a result of these activities, Lussier was indicted, tried and on December 22, 1993 convicted in the United States District Court for the District of Vermont (Billings, J.) on 17 counts of bank fraud, false bank entries, receipt and payment of illegal commissions, money laundering, and making false statements to federal bank examiners. On June 21, 1994 he was sentenced to 46 months in prison and a $100,000 fine, and directed to make restitution to Lyndonville of $426,204.67. The restitution was to be paid in installments amounting to at least 10 percent of Lussier's gross monthly income. We affirmed the judgment of conviction and sentence on August 18, 1995. *See United States v. Lussier,* 71 F.3d 456 (2d Cir.1995).

Lussier then filed a motion to rescind the restitution order under 18 U.S.C. §§ 3583(e)(2) and 3663(g), on the ground that the order was founded on conduct not forming the basis for any of the 17 counts for which he was convicted. The district court ruled it lacked authority to entertain the motion. We affirmed. *See United States v. Lussier,* 104 F.3d 32 (2d Cir. 1997). Undaunted, on January 23, 1997 Lussier again challenged the restitution order, this time by filing a motion under 28 U.S.C. § 2255 on the same ground and also claiming his trial counsel was ineffective.

Meanwhile, on September 26, 1995—a month after we affirmed Lussier's judgment of conviction—Lyndonville had filed the instant civil suit against defendants in the United States District Court for the District of Vermont before Chief Judge J. Garvan Murtha, seeking: payment of the entire restitution amount "forthwith"; execution on the restitution order; damages under 12 U.S.C. § 503 based on Lussier's status as a director and officer of a bank allegedly in the Federal Reserve Bank system; and recovery under four state law theories, including breach of fiduciary duty and fraudulent conveyance. On July 25, 1997 the bank informed the court that it was abandoning that portion of the complaint that sought damages under 12 U.S.C. § 503, doubtless due to the fact that Lyndonville had never been a member of the Federal Reserve system. Hence, the only federal question remaining in Lyndonville's civil suit was its restitution claim.

On September 15, 1997, in response to Lussier's § 2255 motion in the criminal action, Magistrate Judge Niedermeier filed a report recommending elimination of the restitution award. The district court referred the matter back to the magistrate judge for resolution of the conflict of interest claim that was the basis of Lussier's contention that defense counsel was ineffective.

The district court held a six-day bench trial in the present civil action by the bank against the defendants. That trial ended on November 3, 1997. On December 19, 1997 the trial court entered judgment awarding Lyndonville $8,769,740.00 on its state law claims against Lussier, and reserved decision on the restitution claim. On March 11, 1998 it returned to the § 2255 petition and adopted the magistrate judge's recommendation to eliminate the restitution order. On July 2, 1998 Lussier filed a motion under Federal Rules of Civil Procedure 12(h)(3) and 60(b) to set aside the civil judgment in the instant litigation and dismiss the bank's complaint for lack of subject matter jurisdiction.

The district court denied the motion, stating that because it had federal question jurisdiction over the bank's restitution claim, it had supplemental jurisdiction under 28 U.S.C. § 1367(a) over the case as a whole. From the December 1997 judgment awarding the bank over $8 million and from the denial of the motion to dismiss the bank's suit for lack of subject matter jurisdiction, defendants appeal. Although we find that the district court had subject matter jurisdiction over the federal claim in this case, we conclude that the federal claim cannot sustain an award and that the district court had no power to exercise supplemental jurisdiction over the state law claims. Hence, we vacate the judgment.

## DISCUSSION

### I Existence of a Federal Question

 This case presents us with a question of subject matter jurisdiction raised for the first time after trial. It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction. Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.* If subject matter jurisdiction is

lacking, the action must be dismissed. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994). The standard of review for determinations regarding subject matter jurisdiction is clear error for factual findings, and *de novo* for the legal conclusion as to whether subject matter jurisdiction exists. *See Filetech, S.A. v. France Telecom, S.A.*, 157 F.3d 922, 930 (2d Cir.1998).

Lussier contends that the order directing him to make restitution to the bank allowed the bank to invoke only the district court's enforcement jurisdiction, and that such jurisdiction did not give the court supplemental jurisdiction over Lyndonville's state law causes of action. The bank responds that the Victim and Witness Protection Act (Act), specifically 18 U.S.C. § 3663(h)(2), creates a federal civil cause of action to obtain a judgment in the full amount of restitution ordered at sentencing, and that the jurisdiction conferred by § 3663(h)(2) supports supplemental jurisdiction over its state law claims. This provision has since been superseded by 18 U.S.C. § 3664(m)(ii)(B) (Supp.2000). It is undisputed that subject matter jurisdiction is not conferred by diversity because Lussier and Lyndonville are both citizens of Vermont. No other basis for subject matter jurisdiction is urged.

■ Federal question jurisdiction exists whenever the complaint states a cause of action under federal law that is neither "clearly ... immaterial and made solely for the purpose of obtaining jurisdiction" nor "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *accord Spencer v. Casavilla*, 903 F.2d 171, 173 (2d Cir. 1990). It is well settled that plaintiff's failure to state a federal claim upon which relief could be granted does not mean that federal question jurisdiction is lacking. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). After the question of subject matter *jurisdiction* has been resolved, a court proceeds to the *merits* question, that is, whether the plaintiff has stated a federal cause of action. *See Bell*, 327 U.S. at 682, 66 S.Ct. 773.

■ A federal question can support jurisdiction over pendent state claims unless it is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." *Oneida Indian Nation of New York v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). This is the same test used in *Steel Co.* to determine whether a federal question can establish federal jurisdiction at all. *See* 523 U.S. at 89, 118 S.Ct. 1003 (quoting *Oneida Indian Nation*, 414 U.S. at 666, 94 S.Ct. 772).

■ In the present case, there is a substantial and plausible federal question. As discussed below, Lyndonville points to several federal cases permitting federal suits based on restitution orders under the Act. Where federal case law supports the existence of a federal cause of action, such a claim more than suffices as a basis for federal question jurisdiction and for pendent jurisdiction over appropriate state law claims. The district court therefore correctly exercised federal question jurisdiction over the bank's restitution claim.

## II Existence of a Federal Cause of Action

The trial court did not reach Lyndonville's federal civil claim based on the existence of the restitution order in Lussier's criminal case because it had earlier eliminated that order in deciding his § 2255 challenge to his conviction. However, the nature and scope of the federal claim are

germane to the supplemental jurisdiction issue.

At the time Lyndonville filed suit, 18 U.S.C. § 3663(h) (1994) read in relevant part:

(h) an order of restitution may be enforced—

. . . . .

(2) by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action.

The bank insists that the "clear language" of the Act grants it the right to institute a civil suit for restitution. For this proposition, it relies on a handful of cases from district courts and other circuits, none of which we find persuasive.

■■ Whether a particular statutorily defined penalty is civil or criminal "is a matter of statutory construction." *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). Nothing in the statutory language indicates that Congress aimed to create a new civil cause of action. We agree with the conclusion of the Eleventh Circuit, which said when discussing the identical language in § 3663(h)(2)'s predecessor, § 3579(h), "Congress intended to make restitution an element of the criminal sentencing process and not an independent action civil in nature." *United States v. Satterfield*, 743 F.2d 827, 837 (11th Cir.1984). Rather, § 3663(h)(2) made a civil enforcement mechanism available to the beneficiaries of a criminal order of restitution. *See id.* at 838.

The federal courts of appeal have uniformly read the Act, § 3663 and its predecessor § 3579, as creating a process for imposing criminal restitution orders and enforcing them. While the enforcement mechanism is civil, adjudication of the obligation to pay is criminal. As we said in *United States v. Brown*, 744 F.2d 905 (2d Cir.1984), "[t]he fact that a restitution order is enforceable in the same manner as a civil judgment . . . does not transform the former into the latter." *Id.* at 910; *see*

*also United States v. Keith*, 754 F.2d 1388, 1392 (9th Cir.1985); *United States v. Watchman*, 749 F.2d 616, 617 (10th Cir. 1984) ("The enforcement method does not . . . determine the nature of the order nor how the amount is determined."); *Satterfield*, 743 F.2d at 838–39; *United States v. Florence*, 741 F.2d 1066, 1067–68 (8th Cir. 1984); *cf. United States v. Karam*, 201 F.3d 320, 328 (4th Cir.2000) ("A civil settlement does not preclude an award of restitution under [the Act] because restitution under [it] is primarily penal in nature."); *United States v. Lemire*, 720 F.2d 1327, 1352–54 (D.C.Cir.1983) (sentencing judge may determine restitution amount without holding a civil trial).

■■ In addition to the language of the statute, a number of mutually reinforcing rationales support this conclusion. First, any other reading of the statute would implicate the constitutional right to a jury in suits at law. We avoid whenever possible an interpretation that would render a statute unconstitutional. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). Because adjudication of the restitution is an adjunct of sentencing and is therefore part of a criminal proceeding, the Seventh Amendment providing for the preservation of the right of trial by jury in civil suits does not apply. Second, as we observed in *Brown*, judicially ordered restitution in criminal cases has a long history, rooted in the common law at the time the Seventh Amendment was adopted. *See* 744 F.2d at 910. Third, the purpose and process of adjudicating the amount of restitution in a criminal proceeding is quite different from the purpose and process of civil litigation. Restitution as part of a defendant's sentence serves the traditional penal functions of punishment, including rehabilitation. *See Satterfield*, 743 F.2d at 837.

■■ Lyndonville wisely does not argue that the restitution order itself is unconsti-

tutional. Rather, it argues that the Act enables it to seek a federal civil judgment before enforcing the restitution order, and that the civil judgment can modify the original order to require immediate payment in full. For this proposition the bank relies heavily on *Teachers Ins. & Annuity Assoc. v. Green*, 636 F.Supp. 415, 418 (S.D.N.Y.1986), in which it was held that the beneficiary of a restitution order may bring a civil action under § 3663's predecessor for immediate payment of the full amount of the restitution award. As Lyndonville notes, the Fourth Circuit came to the same conclusion as the district court in *Green*. But that conclusion was *dicta* in an opinion that also cited *Satterfield* approvingly on a different issue. *See United States v. Bruchey*, 810 F.2d 456, 461 (4th Cir.1987) (*dicta*). We are also unpersuaded by Lyndonville's citation to *American Express Travel Related Servs. Co. v. Lominac*, 158 F.R.D. 376 (E.D.Va. 1994), a case relying on *Bruchey* and *Green* in which the *pro se* defendants apparently failed even to identify a basis for their "Motion for Dismissal." *Lominac*, 158 F.R.D. at 377. We note additionally that none of these decisions is binding on this Court.

■ Further, we are unable to adopt the bank's suggestion that a plaintiff must obtain a civil judgment before enforcing a restitution order by means of civil process. Section 3663 contains no such requirement. *See United States v. Timilty*, 148 F.3d 1, 3 (1st Cir.1998) ("A restitution order may be enforced in *like manner* as a civil judgment; it need not be reduced first to a civil judgment."); *United States v. Porter*, 90 F.3d 64, 69–70 (2d Cir.1996) (assuming that restitution order can be enforced directly through civil process). *United States v. Fliegler*, 756 F.Supp. 688 (E.D.N.Y.1990), which Lyndonville cites, is not to the contrary. In that case, the United States alleged seven claims for relief, all of which were independent of the criminal restitution order it had previously obtained. *See Fliegler*, 756 F.Supp. at 690, 692. While *Fliegler* did cite *Green*, it simply held that the existence of the (largely unpaid) restitution order did not bar the civil suit. *See id.* at 695.

■ Moreover, § 3663 contained no suggestion that a court *may* convert a restitution order into a civil judgment or modify a restitution order in a civil suit. Not only did § 3663 not create a cause of action but, in our view, the action allowed in *Green* is incompatible with the Act's careful design. The Act outlined the factors a court must consider in ordering restitution, many of which—such as other sources of compensation to the victim, *see* § 3663(e)(1) (1994)—would be irrelevant in a civil proceeding. Section 3663(f) limited the period in which the defendant may be ordered to make restitution with reference to factors unique to the criminal process, including the length of probation and the term of imprisonment or date of sentencing. Section 3663(g) made the restitution order a condition of probation or supervised release and thus enabled the sentencing judge to modify it, if necessary, or to hold the defendant in contempt for failure to comply. The inapplicability of this detailed scheme to civil proceedings lends support to our holding that § 3663 did not create a civil cause of action.

Lyndonville also cites *Florence*, 741 F.2d at 1068, for the notion that the Act contemplated the filing of a civil suit after the imposition of a restitution order. We have no quarrel with this premise. There are many conceivable bases for suit by a crime victim against the perpetrator of the crime. Depending on the circumstances and theory of the case, federal jurisdiction may or may not be available. Section 3663(e)(2) addressed just this situation, limiting the victim's ability to be twice compensated for the same injury. It stated "[a]ny amount paid to a victim under an order of restitution shall be set off against any amount later recovered as compensatory damages by such victim in—(A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent pro-

vided by the law of that State." 18 U.S.C. § 3663(e)(2) (1994). Yet § 3663(e)(2) did not contain any provision that even arguably created a federal cause of action that could be used as a basis for a civil suit. We therefore conclude that the Act's § 3663(h)(2) did not create a federal civil cause of action.[1]

### III Supplemental Jurisdiction

The bank's remaining claims against Lussier arise under state law, and the district court's award of more than $8 million was based solely on these claims. In the absence of diversity jurisdiction, a federal court presented with both federal and state claims may hear the state claims only if they are so closely related to the federal questions as to form part of the same "case or controversy" under Article III. This power to hear related state law claims is called pendent jurisdiction. Pendent jurisdiction exists only where the state and federal claims comprise one case under Article III, tested by whether they share a "common nucleus of operative fact," such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The only federal question in this case—since the bank abandoned its 12 U.S.C. § 503 claim—is whether the bank is entitled to a civil judgment requiring Lussier to pay the full amount of the restitution order forthwith. The fact that the restitution order has been vacated would be relevant to the district court's *discretionary* decision whether or not to *exercise* pendent jurisdiction under § 1367, but it does not answer the question whether pendent jurisdiction *exists*. *See Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657 (2d Cir.1996) (holding district court retained power to exercise pendent jurisdiction even when defendant whose pres-

ence created federal jurisdiction dropped from case).

While the exercise of pendent jurisdiction "is a favored and normal course of action," *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991), such exercise, as noted, requires a common nucleus of operative fact. We have routinely upheld the exercise of pendent jurisdiction where the facts underlying the federal and state claims substantially overlapped, *see, e.g., id.* at 254–58 (affirming exercise of pendent jurisdiction where state and federal claims rested on alleged age discrimination in plaintiff's firing), or where presentation of the federal claim necessarily brought the facts underlying the state claim before the court, *see Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445–48 (2d Cir.1998) (concluding that district court should have entertained state law motions for fees made by plaintiff's lawyer and expert witness as pendent to federal copyright claim). Conversely, we have found pendent jurisdiction lacking when the federal and state claims rested on essentially unrelated facts. *See, e.g., Young v. New York City Transit Auth.*, 903 F.2d 146, 162–64 (2d Cir.1990) (holding that challenge to transit regulation prohibiting panhandling and challenge to state penal law prohibiting loitering shared no common nucleus of operative fact); *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1033 (2d Cir.1979) (as amended) (reversing the district court's exercise of jurisdiction where the federal claim rested on events prior to the effective date of a contract while the state law claim rested on events occurring after that date).

Both parties rely on our decision in *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228 (2d Cir.1979). In *Rosario*, plaintiffs' state claims of false arrest and malicious prosecution arose out of a confrontation between

---

1. We reserve decision, however, on the narrow question whether a right exists to convert a restitution order into a civil judgment, where the peculiarities of state law might make it impossible to recover on the order without a civil judgment in hand.

the plaintiffs and the former manager of their union local. After the confrontation, the local initiated disciplinary proceedings against the plaintiffs. The plaintiffs challenged these disciplinary proceedings under federal law. *See* 605 F.2d at 1233–36, 1247. We held that the confrontation was "unquestionably relevant" to the federal claims, and that the local manager's conduct at the disciplinary proceedings bore on issues common to both claims. We therefore concluded that pendent jurisdiction existed. *See id.* at 1247.

The instant case is different than *Rosario*. Here, the bank's counsel conceded in district court that "[a]s to the restitution order, Count 1 itself, I don't think we'll have any extra evidence other than the conviction." As Lyndonville has observed repeatedly, the restitution order was based on a particular loan (the Gray loan) for which Lyndonville sought damages under state law. Yet the bank implicitly admitted there was no need to introduce any evidence of the Gray loan to support the restitution claim. In Lyndonville's words, the restitution count was "just law," with the existence of a prior valid order as the *only* operative fact.

While the Gray loan was relevant to some of the state law claims, it was irrelevant to the federal claim. Indeed, Lussier's central argument in his successful § 2255 challenge to the restitution order (brought after we had refused to entertain it as grounds for a civil case, *see Lussier*, 104 F.3d at 32) was that the Gray loan was not part of the conduct for which he was convicted. Nor did the existence of the restitution order underlie any of the state claims. Because the state and federal claims share no common nucleus of operative fact, the district court lacked pendent jurisdiction to hear the state law claims.

## CONCLUSION

For the reasons stated above, the judgment of the district court as to the state law claims is vacated and those claims are dismissed for lack of subject matter jurisdiction.