UNITED STATES of America,
Plaintiff,

v.

David B. ST. GERMAIN, and Randy
Overley, Defendants.

No. CIV.A.03–F–1041(BNB).

United States District Court,
D. Colorado.

April 4, 2005.

Christopher Alberto, United States Attorney's Office, Boston, MA, for Plaintiff.

David B. St. Germain, Addison, TX, pro se.

Ty Cheung Gee, Haddon, Morgan, Mueller, Jordan, Mackey & Foreman, PC, Denver, CO, for Defendant.

## ORDER ON PENDING MOTIONS

FIGA, District Judge.

This matter comes before the Court on two pending motions to dismiss filed by Defendant Overley (Dkt.# 13 and 36).

## PROCEDURAL BACKGROUND

On November 12, 2003, Defendant Overley first filed a motion to dismiss the complaint, asserting that it failed to state a claim for relief against him and failed to plead fraud with particularity in contravention of Rule 9(b), F.R.Civ.P. On November 20, 2003, Defendant Overley filed an Amended Motion to Dismiss the Complaint (Dkt.# 13), which asserted the same grounds for dismissal and apparently superceded his earlier motion. On January 13, 2004, the United States filed an opposition to the Amended Motion to Dismiss stating that it intended to file an amended complaint to address Defendant Overley's request for more details (Opposition at 14, n. 8). On January 15, 2004, Defendant Overley filed a reply in support of the Amended Motion to Dismiss stating that he reserved further argument until after the amended complaint was filed.

On April 21, 2004, the United States filed an Amended Complaint. On May 4, 2004, Defendant Overley filed a Motion to Dismiss the Amended Complaint (Dkt.# 36). In this motion he restated his argument to dismiss all of the claims against him in the Amended Complaint under Fed.R.Civ.P. 12(b)(6), but did not restate his argument for dismissal under Fed.R.Civ.P. 9(b). Therefore, the Court concludes that the Amended Complaint apparently rendered moot the Amended Motion to Dismiss filed on November 20, 2003 (Dkt.# 13), and therefore that motion is DENIED as moot. This Order addresses only the arguments made in the Motion to Dismiss the Amended Complaint (Dkt.# 36), hereafter referred to as the "Motion to Dismiss."

## FACTUAL BACKGROUND

This case arises out of an order of restitution entered against Defendant St. Germain on November 21, 1995 in connection with his conviction in a criminal case, and certain subsequent modifications to that order of restitution (Exhibits A, B and C to Motion to Dismiss). St. Germain was convicted in the United States District Court for the District of Massachusetts on nine counts of bank fraud, conspiracy, and making false statements in connection with a loan he obtained from a Massachusetts bank, Metro West Bank. In the original order, the Court imposed a sentence on St. Germain of one year in prison and a five-year term of supervised release, and ordered him to pay $600,000 in restitution (Exhibit A to Motion to Dismiss).

In July 1996, when Defendant St. Germain was placed on probation, the Court

imposed special conditions of probation (Exhibit B to Motion to Dismiss). Among these conditions were that St. Germain was not to apply for any new loans individually or through others, nor was he to incur new credit charges or open additional lines of credit without prior authorization from the United States Probation Department, or be involved in any real estate transactions without the prior approval of the probation officer. He was also required to provide any requested financial information (*Id.*). On July 31, 1997 the Court added as a further condition of probation that St. Germain should pay 25% of his gross income toward restitution (Exhibit C to Motion to Dismiss).

In 1999 the Massachusetts District Court transferred jurisdiction over Defendant St. Germain to the District of Colorado (Exhibit D to Motion to Dismiss). On April 7, 2000, another judge of this district granted the petition of the probation department to transfer jurisdiction over Defendant St. Germain to the District of Colorado, and confirmed the restitution order and conditions of probation set forth above (Exhibit D to Motion to Dismiss).

While on probation, Defendant St. Germain violated the terms of his probation. In February 2001, Judge Nottingham of this district revoked St. Germain's probation and sentenced him to 15 years imprisonment (Exhibit F to Motion to Dismiss). The order expressly stated as a condition of his supervision that Defendant St. Germain shall pay the balance of the restitution ordered by the District of Massachusetts (*Id.* at 4). In February 2002, the government moved to reduce his sentence, apparently due to his cooperation with the government. In December 2002, the motion was granted and St. Germain was sentenced to time served and five years probation as to the remaining five counts (Exhibit G to Motion to Dismiss). St. Germain apparently paid some of the resti-

tution amount ordered by the courts, but a substantial balance remains unpaid.

## PLAINTIFF'S COMPLAINT

On June 6, 2003, Plaintiff United States of America filed the original complaint in this action against Defendants St. Germain and Overley alleging four claims for relief. The Amended Complaint filed on April 16, 2004 avers the same four claims for relief, and alleges in 121 numbered paragraphs a wide variety of actions and conduct allegedly taken by one or more of the named defendants giving rise to the four claims. As the matter is before the Court on a motion to dismiss for failure to state a claim, the plaintiff's allegations at this stage must be accepted as true as pled in the Amended Complaint. However, given the nature of the issues raised in the Motion to Dismiss, there is no need to detail here all the allegations made by plaintiff. Rather, it will suffice simply to summarize some of the pertinent allegations.

Plaintiff essentially alleges that Defendant St. Germain evaded payment of the restitution order by secreting assets and income belonging to him, and that Defendant Overley, although not a defendant in the above-described criminal proceeding and not a party to the restitution order, assisted Defendant St. Germain in his efforts to avoid making the restitution. The Amended Complaint alleges that Defendants Overley and St. Germain met in the early 1990s and maintained their relationship ever since. As a result, the plaintiff alleges that Defendant Overley was aware of St. Germain's criminal conviction and resultant penalties, including St Germain's restitution obligation.

The Amended Complaint alleges that Defendant Overley initially became involved in the activity implicated in this matter when he provided a letter which falsely stated that St. Germain had an offer of employment at Defendant Over-

lay's company, Creative Packing and Design located in Denver, Colorado (Amended Complaint at ¶¶ 22–25). Based on that letter, the Probation Department agreed to allow St. Germain to move from Massachusetts to Denver, and sought the above-referenced Court approval to transfer his probation to Denver, Colorado where he was to begin work for Defendant Overley (Amended Complaint at ¶ 26). The Amended Complaint alleges that Defendant Overley assisted St. Germain in violating the conditions of probation by concealing St. Germain's activities by making it appear that he was working at Overley's company when, in fact, he was not; by acting as St. Germain's "straw" on numerous transactions, and by making false statements to St. Germain's probation officer to conceal St. Germain's business activities, as well as his assets and income (Amended Complaint at ¶ 4).

Particularly pertinent to the Motion to Dismiss are the allegations in the Amended Complaint that in April 1999 Defendant Overley agreed to act as a "straw borrower" for St. Germain in order to receive a loan for the construction of a luxury home in Frankston, Colorado. (Amended Complaint at ¶ 105). As a result, on or about April 22, 1999, St. Germain purchased the land to construct the luxury home. (Amended Complaint at ¶ 104). Although the loan was made in Defendant Overley's name, the Amended Complaint alleges that St. Germain was the true "proponent" of the loan and invested an excess of $30,000 in the project prior to obtaining the loan, continued to invest money as it was being constructed, and negotiated with the builders and oversaw construction. (Amended Complaint at ¶¶ 106, 108–111). The United States asserts that Defendant Overlay was initially promised a 50% ownership interest in the home. However, after the United States incarcerated St. Germain for supervised release violations, Overlay moved into the Frankston Colorado house

and now claims to be the sole owner of the home. (Amended Complaint at ¶ 76, 113, 114).

The Amended Complaint also alleges various occasions on which Defendant Overley apparently made false statements to one or more of the probation officers supervising St. Germain regarding his work and business activities (Amended Complaint at ¶¶ 27–55).

The United States purports to bring this action under the authority of 18 U.S.C. §§ 3664 and 3613(a) and (f), under the statutory provisions of what is sometimes referred to as the Victim and Witness Protection Act (Amended Complaint at ¶¶ 6, 10). Taken together, these statutes set out a procedure for the enforcement of criminal fines and restitution orders.

In Count I of the Amended Complaint, the United States seeks a declaratory judgment declaring St. Germain the true sole owner of the Franktown, Colorado property referred to above, or in the alternative, that St. Germain is at least a 50% owner (Amended Complaint at ¶ 123). Count II of the Amended Complaint follows from Count One, and seeks to impose a constructive trust on St. Germain's interest in the Franktown, Colorado property (Amended Complaint at ¶ 130).

Counts III and IV of the Amended Complaint appear to be common law claims asserted by the United States. Count III alleges false statements by Defendants St. Germain and Overley which rendered "the United States unable to secure payment of the full amount of the restitution for the crime victim." (Amended Complaint at ¶ 134). The Count further alleges that "[a]s a result, the crime victim has not received the restitution to which it is entitled and has been damaged thereby." (Amended Complaint at ¶ 135). Count IV alleges a civil conspiracy by Defendants St. Germain and Overley "to deceive and de-

fraud the United States and the crime victim of monies that should have been paid to the crime victim as restitution." (Amended Complaint at ¶ 137). The prayer for relief seeks the declaratory judgment and imposition of a constructive trust on the Franktown, Colorado property as discussed above, pursuant to Counts I and II. The prayer for relief also seeks a judgment against Overley pursuant to Counts III and IV in favor of the United States "for the benefit of the crime victim for an amount equal to the unpaid portion of St. Germain's restitution order ...." (Amended Complaint at 20).

## DEFENDANT'S MOTION TO DISMISS

Defendant Overley moves to dismiss all claims against him under Fed.R.Civ.P. 12(b)(6) arguing that the liability imposed by a restitution order may not be transferred to a third party through a civil action, and that the United States has no standing to enforce a restitution order against a person not the subject of the order (Motion to Dismiss at 2). In his reply brief to the plaintiff's Opposition Brief, Defendant Overley appears to recognize there is a substantial difference between Counts I and II, on the one hand, and Counts III and IV, on the other (Defendant's Reply Brief at 2). This Court agrees and finds, for the reasons set forth below, that Counts I and II should not be dismissed, but that Counts III and IV should be.

## ANALYSIS

### A. *Counts I and II*

Counts I and II are interrelated in that together they seek a declaration of the ownership interests in the Franktown, Colorado property and the imposition of a constructive trust on whatever portion of the property may belong to Defendant St. Germain. Each of the claims has been brought in reference to the plaintiff's enforcement of the restitution order entered against St. Germain. Therefore, the anal-

ysis as to whether these claims may be brought depends on the statutory mechanisms for enforcement of a restitution order.

Title 18 U.S.C. § 3664 provides two methods for enforcing an order of restitution. Under 18 U.S.C. § 3664(m)(1)(A), the government is permitted to enforce restitution (i) "in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or (ii) by all other available and reasonable means." While subsection (ii) provides a broad method for enforcement of a restitution order, the analysis in this case actually turns on the enforcement provisions in subchapter B of chapter 229. The relevant portion of that subchapter is codified at 18 U.S.C. § 3613.

Title 18 U.S.C. § 3613(a) specifically pertains to enforcement of judgments in criminal cases imposing fines on a defendant. That subsection provides that "[t]he United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." Title 18 U.S.C. § 3613(f) provides: "In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for enforcement of an order of restitution." Consequently, if the state law of Colorado permits the enforcement of a civil judgment through claims for declaratory judgment and constructive trust, the United States may enforce the restitution order in a similar manner.

Colorado law clearly recognizes that "[a] constructive trust is an equitable device used to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." *Paoloni v. Goldstein*, 331 F. Supp 2d 1310, 1313 (D.Colo.2004), citing *Lyons v. Jefferson Bank & Trust* 793 F.Supp.

981, 985 (D.Colo.1992), *rev'd. in part on other grounds* 994 F.2d 716 (10th Cir. 1993); *In re Marriage of Allen,* 724 P.2d 651, 656–57 (Colo.1986). "When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Page v. Clark,* 197 Colo. 306, 315, 592 P.2d 792, 798 (1979).

At least one federal court has recognized that a restitution order may be enforced against property or funds that have been unjustly obtained, and the property and funds do not have to be in the possession of the defendant to be subject to constructive trust. *See Corporacion Insular de Seguros v. Reyes–Munoz,* 849 F.Supp. 126, 135 (D.P.R.1994)(holding that the imposition of a constructive trust on stolen funds in custody of criminal defendant's wife was appropriate). The purpose of placing property in a constructive trust is not to impose personal liability on the defendant, but instead to restore the particular funds to the plaintiff. *See Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 214, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

If legal title to the Franktown, Colorado property is in the name of Defendant Overley as the Amended Complaint alleges, and equitably or in "good conscience" that title, or some portion of it, should be in the name of Defendant St. Germain and therefore subject to attachment for purposes of enforcing the restitution order, then a constructive trust may be imposed. If, on the other hand, the evidence reveals that St. Germain has no interest in the property as Defendant Overley appears to assert, then there would be no basis for the entry of a declaratory judgment or the imposition of a constructive trust. But at this stage of this case, this Court cannot determine that factual issue.

■ Because Colorado law recognizes the use of constructive trust as a method of enforcement of a civil judgment, and since 18 U.S.C. § 3613(f) provides that such method may be used to enforce a restitution order, the only question which remains is whether the United States has adequately pled its claim for constructive trust. Defendant Overley contends that it has not, because the United States failed to adequately plead wrongdoing by St. Germain that would make it inequitable for Overley to remain in possession of the Franktown property (Motion to Dismiss at 26). Specifically, Overley asserts that the government failed to include allegations that (a) St. Germain failed to pay 25% of gross income toward restitution, (b) that he was in violation of probation condition, or (c) his alleged interest or alleged investment constituted any part of his gross income or any part of the 25% payable. *Id.*

The Court does not agree. The United States amply detailed St. Germain's alleged noncompliance with the restitution order through allegations referring to his undisclosed assets and substantial investment in the Franktown property, and Overley's alleged complicity in causing the Franktown property to be placed in his name. Further, the Court notes that the United State's allegations that St. Germain is either a full or 50% owner of the property sufficiently avers that money that should have been paid to the victim in restitution may now be invested in the house. Therefore, the United States has adequately plead that the elements necessary to seek declaratory judgment and if successful, impose a constructive trust. For these reasons, the Court denies Defendant Overley's motion to dismiss Counts I and II of the Amended Complaint.

### B. Counts III and IV

Unlike Counts I and II, the plaintiff's claims of fraud and civil conspiracy are separate causes of action that do not appear to arise under any of the judgment enforcement mechanisms contemplated by 18 U.S.C. § 3613(a) or 18 U.S.C. § 3664(m)(1)(A). Rather, these claims seek a judgment against Defendant Overley for damages "in an amount equal to the unpaid portion of St. Germain's restitution order." (Amended Complaint at 20).

In *Lyndonville Savings Bank & Trust Co. v. Lussier*, 211 F.3d 697 (2d Cir.2000), the court was faced with the argument of the plaintiff bank, which was named in a restitution order as the crime victim of defendant Lussier's fraudulent scheme, that the predecessor statute to 18 U.S.C. § 3664(m)(1)(A), then codified at 18 U.S.C. § 3663, creates a federal civil cause of action to obtain a judgment in the full amount of restitution ordered at sentencing, and supports supplemental jurisdiction over state law claims to recover additional amounts beyond the restitution amount. 211 F.3d at 701. The Court surveyed various subsections of 18 U.S.C. § 3663, and rejected the bank's argument, stating that the statute did not create a federal cause of action. 211 F.3d at 704.

In reaching its decision, the court stated that the holding of the district court in *Teachers Insurance and Annuity Association v. Green*, 636 F.Supp. 415, 418 (S.D.N.Y.1986), a case upon which the plaintiff bank relied, was "incompatible with the [Victim and Witness Protection] Act's careful design." 211 F.3d at 703. In *Green*, the district court had described the then predecessor to 18 U.S.C. § 3664(m)(1)(A) as "a mechanism to allow the victim to obtain the amount ordered as restitution." 636 F.Supp. at 418.

 In this Court's view, both the ruling in *Lyndonville Savings Bank & Trust Comp. v. Lussier, supra*, and its rejection of the statement in *Green*, indicate that nothing in the Victim and Witness Protection Act authorizes the victim of a criminal scheme to use a restitution order as the sole basis for imposing civil liability upon a third party who has assisted a perpetrator of a crime in evading a restitution order. Here, where the United States is standing in the shoes of the crime victim the same result applies. The language of the Act does not establish such an independent cause of action nor is the creation of such a claim implied where a judgment would not be based on a *res* belonging to the crime perpetrator. The plaintiff has cited no case where a court has recognized a civil action for fraud against a third party based solely on the third party's alleged interference with enforcement of a restitution order.[1]

The plaintiff seems to recognize the above lack of authority emanating from the statute, as it argues in opposition to Defendant Overley's motion that the damages it is seeking from him in Counts III and IV are not really the unpaid restitution amounts, but rather are out of pocket expenses incurred by the United States in seeking to enforce the restitution order. The United States suggests in its brief that Defendant Overley's allegedly false statements to the probation officers, and other deceptive conduct, caused the United States to incur "substantial expenses" which arguably would not have been incurred but for Overley's conduct (Plain-

---

**1.** The Court finds plaintiff's citations to *United States v. Lombardi*, 5 F.3d 568 (1st Cir.1993) as support for this proposition to be unpersuasive (Plaintiff's Opposition at 13, 16). It is apparent from the context that the Court's statement in *Lombardi* that "assets held nominally by family members are really Lombardi's," 5 F.3d at 573, was more in the form of dicta.

tiff's Opposition at 14). Thus the United States appears to be suggesting that Counts III and IV are actually claims by the United States on behalf of itself, not on behalf of the crime victim, seeking to recover damages incurred by it, and not the amount provided for by the restitution order.

The problem with this position is that the Amended Complaint asserts no such theory. The language in Counts III and IV quoted above, as well as in the prayer for relief, plainly shows that the claims were brought "for the benefit of the crime victim" and not on behalf of the United States, and seek to recover "an amount equal to the unpaid portion of St. Germain's restitution order" and not damages incurred by the United States itself (Amended Complaint at 20).

Accordingly, for these reasons Counts III and IV of the Amended Complaint are DISMISSED.

## CONCLUSION

Defendant Overlays Amended Motion to Dismiss the Complaint (Dkt.# 13) is DENIED as moot.

Defendant Overlays Motion to Dismiss the Amended Complaint (Dkt.# 36) is GRANTED in part and DENIED in part. Counts III and IV of the Amended Complaint are DISMISSED. The motion is DENIED as to Counts I and II.

Defendant Overley is directed to file an answer to the Amended Complaint within 10 days of this ORDER. No further amendments to the Amended Complaint will be permitted.

Discovery, including expert discovery, shall be completed by **June 20, 2005.**

Dispositive motions, if any, shall be due by **July 15, 2005.**

A four-day trial to the Court is set for **September 12, 2005, at 9:00 a.m.**

The parties are directed to present to the Magistrate Judge, within 10 days of this order, a proposed revised Scheduling Order amending the February 6, 2004 Scheduling Order accordingly.